## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF CONNECTICUT
## (BRIDGEPORT)

IN RE:  DALE J. MORGADO                                    CASE NO. 19-51232 (JAM)
            DEBTOR

UNITED BANK RESIDENTIAL PROPERTIES, INC.    CHAPTER 7
            MOVANT

DALE J. MORGADO
            RESPONDENT

RICHARD COAN, TRUSTEE                                    MARCH 2, 2020

### MOTION FOR RELIEF FROM AUTOMATIC STAY

The undersigned movant, United Bank Residential Properties, Inc. (the "Movant"), an interested party which is the mortgagee of the real property known as 19 Sugar Hollow Road and 00 Sugar Hollow Road, Wilton, Connecticut (collectively the "Property") which is owned by a Wyoming limited liability company by the name of River Ridge, LLC (formerly known as Blackacre Realty, LLC), which interest is impacted by the automatic stay imposed by the petition filed by the above-named debtor, Dale J. Morgado (the "Debtor"), by and through its undersigned attorney, pursuant to 11 U.S.C. §§ 362 (d)(1) and 362(d)(2) as well as Bankruptcy Rule 4001, moves this Court for an Order granting relief from the automatic stay imposed by 11 U.S.C. § 362(a) (the "Stay") and as grounds therefore respectfully represents the following facts and good cause to the Court:

1.      Movant is the owner and holder of a promissory note dated January 26, 2015 in the original principal amount of $728,000.00 executed by Debtor in favor of United Bank (the "Note"). A true and accurate copy of the Note (redacted as required by bankruptcy rules) is attached to the affidavit in support of this Motion.

1

2.      The Note was secured by an open-end mortgage deed encumbering the Property which was executed and conveyed in favor of United Bank by Blackacre Realty, LLC on January 26, 2015 (the "Mortgage").  On or about September 2, 2015, Blackacre Realty, LLC, a Wyoming limited liability company, changed its name to River Ridge, LLC.  That entity was administratively dissolved by the Wyoming Secretary of State in 2017 but reformed in August, 2019 by a new Wyoming filing (see attached Exhibit A). The Mortgage was recorded on January 29, 2015 in Volume 2410 at Page 145 of the Wilton Land Records. A true and accurate copy of the Mortgage (redacted as required by bankruptcy rules) is attached to the affidavit in support of this Motion.

3.      Movant is the assignee and holder of the Note and Mortgage per Allonge and Assignment from United Bank to Movant dated April 27, 2018 attached to the affidavit.  Movant seeks relief for the purpose of obtaining possession of the Property; although the owner of the equity of redemption is not in Bankruptcy, if a new foreclosure sale is sought, Movant will need to be able to advise the Superior Court that the stay has been lifted so that Debtor's possessory rights can be affected.  Absent the relief, conducting the sale would be fruitless (or at the very least, less successful) because anyone bidding at auction would be unable to obtain physical possession of the Property upon confirmation of the sale.

4.      The foreclosure action was commenced February 28, 2018 in the State of Connecticut Superior Court for the judicial district of Fairfield at Stamford and bears the caption "*United Bank v. Dale James Morgado*" and docket number FST-CV-18-6035258-S (the "Foreclosure").

5.      United Bank commenced the foreclosure as the result of the default in payments on the loan.  The Borrower failed to make the payments due to United Bank commencing in September, 2017.  United Bank made demand on Dale Morgado and River Ridge, LLC and after

2

the loan was accelerated, the foreclosure was commenced in February, 2018. In the foreclosure action, Movant was substituted as Plaintiff following a motion filed for that purpose after the Note and Mortgage were assigned to Movant.

6.     In the Foreclosure, multiple judgments of foreclosure by sale were entered by the Court. The most recent sale was scheduled to occur on September 14, 2019. On September 13, 2019, Bankruptcy petitions were filed by Dale J. Morgado and by River Ridge, LLC in this Court. The first River Ridge, LLC Bankruptcy case was dismissed on September 13, 2019; the second River Ridge, LLC Bankruptcy case, also filed on September 13, 2019 (Case No. 19-51234), was dismissed on October 17, 2019. At the time of the last entry of judgment, Movant's debt, based on a February 4, 2019 Affidavit, was determined to be $788,225.09 (plus additional fees and costs awarded by the court) and the fair market value of the Property was found to be $920,000.00. A subsequent appraisal, including additional acreage indicated a value of the two combined parcels which comprise the Property to be valued at $975,000.00 (See Exhibit B).

7.     Debtor does not possess the equity of redemption in the Property and now holds only a possessory interest in the Property.

8.     The filing of Debtor's petition implemented the automatic stay and precludes Movant from seeking an order of possession of the Property and/or service of an execution for ejectment under applicable state law. Movant originally intended to "wait out" the Bankruptcy case but now that an adversary proceeding has been filed with respect to Debtor, the case is not likely to be resolved in the immediate future. In addition to Movant's mortgage debt, there is a subsequent interested party in the form of the Receiver of Dale James Morgado's interest in River Ridge, LLC, which receiver was appointed by Judge Mottolese in the case of *ACF 2006 Corp. v. Morgado PA et al.*, FST-CV-18-6034894-S. The Receiver, Attorney Jeffrey Hellman, sought to

3

be cited in to the foreclosure action and is now listed as a party and also seeks recovery from the sale of the Property.

9.      Bankruptcy Code § 362(d)(1) states that on request of a party in interest, the court shall grant relief from the stay by terminating, annulling, modifying, or conditioning the stay "for cause, including lack of adequate protection of an interest in property of such party in interest."

10.     In support of its claim under section 362(d)(1) Movant represents that cause for termination of the stay is the lack of any interest in the Property on the part of the Debtor other than a possessory interest. On information and belief, Debtor is not paying to use and occupy the Property. Given that Debtor was the organizer of the Wyoming limited liability company that owns the Property and has not paid on the mortgage since September, 2017, this is not a typical landlord/tenant arrangement which could give rise to a claim that an unsuspecting tenant could be deprived of its rights because of actions by an unscrupulous landlord. As a result of these facts, Movant respectfully submits that it showed good cause for termination of the stay and, further, that it is not and will not be adequately protected by use and occupancy payments or any other form of payment for the impositions which accrue relative to the Property while the petition is pending.

11.     Further, Bankruptcy Code § 362(d)(2) states that on request of a party in interest, the court shall grant relief from the stay by terminating, annulling, modifying, or conditioning the stay "…with respect to a stay of an act against property under subsection (a) of this section, if - (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization;…."

12.     Movant respectfully submits that Debtor meets both conditions for the Court to enter an order of relief from stay under section 362(d)(2) in that: 1. The subject Property is not

4

owned by Debtor; and 2. Debtor's petition is filed under chapter 7 which indicates that he is not attempting to reorganize his debts. Rather, Debtor is seeking entry of a discharge to eliminate his debts and it is not Movant's intention to obtain relief from the stay to enforce any rights with respect to collecting the amounts due on the Note.

13.     Accordingly, Movant submits that as the Debtor holds a mere possessory interest in the Property which impedes Movant's rights therein (which are not adequately protected by any form of consideration) and as Debtor does not own the Property, Movant has demonstrated cause for termination of the stay under both section 362(d)(1) and 362(d)(2). Accordingly, the automatic stay should be terminated to permit Movant to enforce its rights to possession of the Property by further order of the State of Connecticut Superior Court as prescribed by state law.

WHEREFORE, Movant requests relief from the automatic stay imposed by filing of Debtor's petition by order of the Court allowing Movant to obtain possession of the Property in accordance with applicable non-bankruptcy law. Movant further requests that Rule 4001(a)(3) be declared inapplicable and that Movant may immediately enforce the Order upon receipt thereof.

Dated at West Hartford, Connecticut, this 2nd day of March, 2020.

MOVANT – UNITED BANK RESIDENTIAL
PROPERTIES, INC.

By /s/   Linda C. Hadley, Esq.
        Linda C. Hadley, Esq.
        Gfeller Laurie, LLP
        977 Farmington Avenue / Suite 200
        West Hartford, CT 06107
        Telephone: (860) 760-8400
        Federal Bar No. ct27594
        Email: lhadley@gllawgroup.com

# EXHIBIT A

## STATE OF WYOMING * SECRETARY OF STATE
## EDWARD A. BUCHANAN
## BUSINESS DIVISION

Herschler Bldg East, Ste.100 & 101, Cheyenne, WY 82002-0020

Phone 307-777-7311

Website: http://soswy.state.wy.us · Email: business@wyo.gov

## Filing Information

⚠ Please note that this form CANNOT be submitted in place of your Annual Report.

| Name | **River Ridge LLC** | | |
|------|---------------------|---|---|
| **Filing ID** | **2014-000676622** | | |
| Type | Limited Liability Company | Status | Inactive - Administratively Dissolved (Tax) |

### General Information

| | | | |
|---|---|---|---|
| Old Name | BlackAcre Realty, LLC | Sub Status | Archived |
| Fictitious Name | | Standing - Tax | Delinquent |
| | | Standing - RA | Delinquent |
| Sub Type | Close | Standing - Other | Good |
| Formed in | Wyoming | Filing Date | 12/02/2014 10:38 AM |
| Term of Duration | Perpetual | Delayed Effective Date | |
| | | Inactive Date | 02/08/2017 |

### Principal Address

228 Park Ave S Unit
New York, NY 10003

### Mailing Address

228 Park Ave S Unit
New York, NY 10003

### Registered Agent Address

No Agent
No Office
Cheyenne, WY 82001

### Parties

| Type | Name / Organization / Address |
|------|-------------------------------|
| Organizer | Dale James Morgado |

### Notes

| Date | Recorded By | Note |
|------|-------------|------|
| | | |

# Filing Information

 Please note that this form CANNOT be submitted in place of your Annual Report.

| Name | **River Ridge LLC** | | | | |
|---|---|---|---|---|---|
| **Filing ID** | **2014-000676622** | | | | |
| Type | Limited Liability Company | | Status | Inactive - Administratively Dissolved (Tax) |

## Most Recent Annual Report Information

| Type | Original | | | | AR Year | 2015 |
|---|---|---|---|---|---|---|
| License Tax | $50.00 | AR Exempt | N | | AR ID | 02422079 |
| AR Date | 2/8/2016 3:40 PM | | | | | |
| Web Filed | Y | | | | | |

### Officers / Directors

Type                    Name / Organization / Address

| **Principal Address** | **Mailing Address** |
|---|---|
| 109 E 17th Street | 109 East 17th Street |
| Suite 410 | Suite 410 |
| Cheyenne, WY 82001 | Cheyenne, WY 82001 |

## Annual Report History

| Num | Status | Date | Year | Tax |
|---|---|---|---|---|
| 02422079 | Original | 02/08/2016 | 2015 | $50.00 |

Principal Address 1 Changed From: 109 E 17th St Ste 410 To: 109 E 17th Street

Principal Address 2 Changed From: No value To: Suite 410

## Amendment History

| ID | Description | Date |
|---|---|---|
| 2019-002496950 | System Archive | 02/10/2019 |

Filing Sub Status Changed From: Current To: Archived

| 2017-002019655 | Address Update | 02/16/2017 |
|---|---|---|

Principal Address 1 Changed From: 109 E 17th Street Ste 410 To: 228 Park Ave S Unit

Principal City Changed From: Cheyenne To: New York

Principal State Changed From: WY To: NY

Principal Postal Code Changed From: 82001 To: 10003

| 2017-002019589 | RA Resignation | 02/16/2017 |
|---|---|---|
| 2017-002013792 | Dissolution / Revocation - Tax | 02/08/2017 |

Filing Status Changed From: Active To: Inactive - Administratively Dissolved (Tax)

Inactive Date Changed From: No Value To: 02/08/2017

| 2016-001982718 | Delinquency Notice - Tax | 12/02/2016 |
|---|---|---|

  
## Filing Information

 Please note that this form CANNOT be submitted in place of your Annual Report.

| Name | River Ridge LLC | | |
|---|---|---|---|
| Filing ID | 2014-000676622 | | |
| Type | Limited Liability Company | Status | Inactive - Administratively Dissolved (Tax) |

| | | |
|---|---|---|
| 2016-001864757   Address Update | | 03/08/2016 |

Principal Address 1 Changed  From: 109 E 17th Street  To: 109 E 17th Street Ste 410
Principal Address 2 Changed  From: Suite 410  To: No value

| 2016-001855161   Reinstatement - Tax    . | | 02/08/2016 |
|---|---|---|

Filing Status Changed  From: Inactive - Administratively Dissolved (Tax)  To: Active

| 2016-001854005   Dissolution / Revocation - Tax | | 02/08/2016 |
|---|---|---|

Filing Status Changed  From: Active  To: Inactive - Administratively Dissolved (Tax)
Inactive Date Changed  From: No Value  To: 02/08/2016

| 2015-001828061   Delinquency Notice - Tax | | 12/02/2015 |
|---|---|---|
| 2015-001821185   Address Update | | 11/09/2015 |

Principal Address 1 Changed  From: 3725 S Ocean Dr Unit 1222  To: 109 E 17th St Ste 410
Principal City Changed  From: Hollywood  To: Cheyenne
Principal State Changed  From: FL  To: WY
Principal Postal Code Changed  From: 33019  To: 82001

| 2015-001821183   RA Name/Address Change | | 11/09/2015 |
|---|---|---|

Registered Agent # Changed  From: 0124015  To: 0181557
Registered Agent Organization Name Changed  From: Northwest Registered Agent Service, Inc.  To: Registered Agents Of Wyoming, LLC
Registered Agent Physical Address 1 Changed  From: 412 N Main St Ste 100  To: 400 E 20th St
Registered Agent Physical City Changed  From: Buffalo  To: Cheyenne
Registered Agent Physical County Changed  From: Johnson  To: Laramie
Registered Agent Physical Postal Code Changed  From: 82834  To: 82001

| 2015-001821182   Name Change | | 11/09/2015 |
|---|---|---|

Filing Name Changed  From: BlackAcre Realty, LLC  To: River Ridge LLC

| See Filing ID      Initial Filing | | 12/02/2014 |
|---|---|---|

## STATE OF WYOMING ∗ SECRETARY OF STATE
## EDWARD A. BUCHANAN
## BUSINESS DIVISION

Herschler Bldg East, Ste.100 & 101, Cheyenne, WY 82002-0020
Phone 307-777-7311
Website: http://soswy.state.wy.us · Email: business@wyo.gov

## Filing Information

 Please note that this form CANNOT be submitted in place of your Annual Report.

| Name | **River Ridge LLC** | | |
|---|---|---|---|
| Filing ID | **2019-000868735** | | |
| Type | Limited Liability Company | Status | Active |

### General Information

| | | | |
|---|---|---|---|
| Old Name | | Sub Status | Current |
| Fictitious Name | | Standing - Tax | Good |
| | | Standing - RA | Good |
| Sub Type | Close | Standing - Other | Good |
| Formed in | Wyoming | Filing Date | 08/01/2019 12:24 PM |
| Term of Duration | Perpetual | Delayed Effective Date | |
| | | Inactive Date | |

### Principal Address

19 Sugar Hollow Road
River Ridge
Wilton, CT 06897

### Mailing Address

19 Sugar Hollow Road
River Ridge
Wilton, CT 06897

### Registered Agent Address

Registered Agents Inc.
30 N Gould St Ste R
Sheridan, WY 82801

### Parties

| Type | Name / Organization / Address |
|---|---|
| Organizer | Dale Morgado  River Ridge, 19 Sugar Hollow Road, Wilton, CT 06897 |

### Notes

| Date | Recorded By | Note |
|---|---|---|
| | | |

## Annual Report History

| Num | Status | Date | Year | Tax |
|---|---|---|---|---|
| | | | | |

### Amendment History

# Filing Information

 Please note that this form CANNOT be submitted in place of your Annual Report.

| Name | River Ridge LLC | | |
|---|---|---|---|
| Filing ID | 2019-000868735 | | |
| Type | Limited Liability Company | Status | Active |

| ID | Description | | Date |
|---|---|---|---|
| See Filing ID | Initial Filing | | 08/01/2019 |

EXHIBIT B

Flax Appraisals

19VS23950
File No. s-50569

## APPRAISAL OF



Single Family Residence

## LOCATED AT:

19 Sugar Hollow Rd
Wilton, CT  06897

## FOR:

United Bank Connecticut, ISAOA/ATIMA
1645 Ellington Road
South Windsor, CT, 06074

## BORROWER:

Dale Morgado

## AS OF:

June 17, 2019

## BY:

Robert T. Lydon

Flax Appraisals

19VS23950
File No. s-50569

Nations Valuation Services
United Bank Connecticut, ISAOA/ATIMA
1645 Ellington Road
South Windsor, CT, 06074

File Number:  s-50569

In accordance with your request, I have appraised the real property at:

19 Sugar Hollow Rd
Wilton, CT  06897

The purpose of this appraisal is to develop an opinion of the market value of the subject property, as improved.
The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the market value of the property as of   June 17, 2019                          is:

$975,000
Nine Hundred Seventy-Five Thousand  Dollars

The attached report contains the description, analysis and supportive data for the conclusions,
final opinion of value, descriptive photographs, limiting conditions and appropriate certifications.

Respectfully Submitted,

Robert T. Lydon

Certified Appraiser

Lydon Appraisal Group

APPRAISAL REPORT

## Uniform Residential Appraisal Report

19VS23950
File No. s-50569

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | |
|---|---|---|
| Property Address 19 Sugar Hollow Rd | City Wilton | State CT   Zip Code 06897 |
| Borrower Dale Morgado | Owner of Public Record Blackacre Realty LLC | County Fairfield |

Legal Description Vol: 2410, Page: 142

Assessor's Parcel # 12 67 & 12 67 1                                                                 Tax Year 2019                                   R.E. Taxes $ 25,964

Neighborhood Name Georgetown                                                 Map Reference MSA#14660                          Census Tract 0451.02

Occupant [X] Owner [ ] Tenant [ ] Vacant           Special Assessments $ 0                               [ ] PUD   HOA $        0   [ ] per year   [ ] per month

Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)

Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) Asset Valuation.

Lender/Client United Bank Connecticut, ISAOA/ATIMA         Address 1645 Ellington Road, South Windsor, CT 06074

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?         [ ] Yes [X] No

Report data source(s) used, offering price(s), and date(s). SmartMLS, Owner

[ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

CONTRACT

Contract Price $ _____ Date of Contract _____   Is the property seller the owner of public record? [ ] Yes [ ] No   Data Source(s) _____

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?   [ ] Yes [ ] No

If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location [ ] Urban | [X] Suburban | [ ] Rural | Property Values | [X] Stable | [ ] Declining | PRICE | AGE | One-Unit | 30 % |
| Built-Up [X] Over 75% | [ ] 25-75% | [ ] Under 25% | Demand/Supply [ ] Shortage | [X] In Balance | [ ] Over Supply | $(000) | (yrs) | 2-4 Unit | 5 % |
| Growth [ ] Rapid | [X] Stable | [ ] Slow | Marketing Time [ ] Under 3 mths | [X] 3-6 mths | [ ] Over 6 mths | 200 Low | 0 | Multi-Family | 5 % |
| Neighborhood Boundaries Subject neighborhood is bounded Ridgefield, CT to the north and west; | | | | | | 2000 High | 300 | Commercial | 50 % |
| Redding, CT to the east and Rt 7 to the south | | | | | | 600 Pred. | 65 | Other Vacant | 10 % |

Neighborhood Description The appeal of the subject marketing area is deemed good and is within close proximity to schools, shopping areas and other town amenities. Employment stability is deemed good and large employment centers are within commuting distance. Small businesses primarily make up the commercial land use and is not deemed adverse to marketability.

Market Conditions (including support for the above conclusions) See Attached Addendum.

Dimensions See Attached Map                           Area 5.71 ac                         Shape Slightly Irregular                        View B;Wtr;River

Specific Zoning Classification R-1                     Zoning Description Single Family Residential / 1 acre minimum

Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use?   [X] Yes [ ] No   If No, describe. See Attached Addendum.

| Utilities | Public | Private | Other (describe) | | | Public | Other (describe) | | Off-site Improvements—Type | | Public | Private |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | | Water | | | [X] Well | | Street Asphalt | | [X] | |
| Gas | | [X] Propane | | Sanitary Sewer | | | [X] Septic | | Alley None | | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No   FEMA Flood Zone X   FEMA Map # 09001C0239F   FEMA Map Date 06/18/2010

Are the utilities and off-site improvements typical for the market area?   [X] Yes [ ] No   If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?   [X] Yes [ ] No   If Yes, describe. External obsolescence noted due to the subject's proximity and Rt 7. However, the property offers natural buffers that mitigates it's exposure.

SITE

| GENERAL DESCRIPTION | | FOUNDATION | | EXTERIOR DESCRIPTION materials/condition | INTERIOR materials/condition | | |
|---|---|---|---|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | | [ ] Concrete Slab [X] Crawl Space | | Foundation Walls Concrete,Stn/Avg | Floors | HW,Cpt,Tile/Gd | |
| # of Stories 2.0 | | [ ] Full Basement [X] Partial Basement | | Exterior Walls Clapboard/Avg | Walls | Dry,Plast/Pnl/Gd | |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | | Basement Area 986 sq. ft. | | Roof Surface Asphlt Shgl/Avg | Trim/Finish | Hardwood/Gd | |
| [X] Existing [ ] Proposed [ ] Under Const. | | Basement Finish 0 % | | Gutters & Downspouts Aluminum/Avg | Bath Floor | Tile/Gd | |
| Design (Style) Colonial | | [X] Outside Entry/Exit [X] Sump Pump | | Window Type DHung,Csmt/Gd | Bath Wainscot | Tile/Gd | |
| Year Built 1936 | | Evidence of [ ] Infestation | | Storm Sash/Insulated Wood,Vyl/Gd | Car Storage | [ ] None | |
| Effective Age (Yrs) 12 | | [ ] Dampness [ ] Settlement | | Screens Mesh/Gd | [X] Driveway # of Cars 6 | | |
| Attic | [ ] None | Heating [X] FWA [ ] HWBB [ ] Radiant | Amenities | WoodStove(s) # 0 | Driveway Surface Asphalt | | |
| [ ] Drop Stair | [X] Stairs | [ ] Other | Fuel Oil* | [X] Fireplace(s) # 1 | Fence None | [X] Garage # of Cars 2 | |
| [X] Floor | [ ] Scuttle | Cooling [X] Central Air Conditioning | | [ ] Patio/Deck None [X] Porch 1-open | [ ] Carport # of Cars 0 | | |
| [X] Finished | [X] Heated | [ ] Individual [ ] Other | | Pool None | Other None | [ ] Att. [X] Det. | [ ] Built-in |

Appliances [X] Refrigerator [X] Range/Oven [X] Dishwasher [ ] Disposal [X] Microwave [X] Washer/Dryer [ ] Other (describe)

Finished area above grade contains: 17 Rooms   7 Bedrooms   4.1 Bath(s)   5,582 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.). See Attached Addendum.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.) C3;Kitchen-remodeled-one to five years ago;Bathrooms-updated-one to five years ago;The subject has been well maintained with regular updates and a kitchen renovation. Improvements are deemed to be in good overall marketable condition. Design/appeal is deemed good. Quality of construction is deemed Q4. No items of functional obsolescence were observed.*2 oil tanks in basement-no damage or leakage noted

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?   [ ] Yes [X] No   If Yes, describe. See Attached Addendum.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?   [X] Yes [ ] No   If No, describe. _____

IMPROVEMENTS

APPRAISAL REPORT

## Uniform Residential Appraisal Report

19VS23950
File No. s-50569

| There are | 11 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 980,000 | | to $ 1,150,000 | |
|---|---|---|---|---|---|
| There are | 21 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 670,000 | | to $ 1,375,000 | |

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 19 Sugar Hollow Rd | 579 Ridgefield Rd | | 18 Georges Hull Hill Rd | | 87 Marchant Rd | |
| | Wilton, CT 06897 | Wilton, CT 06897 | | Redding, CT 06896 | | Redding, CT 06896 | |
| Proximity to Subject | | 3.77 miles SW | | 4.33 miles NW | | 3.67 miles NE | |
| Sale Price | $ | $ 1,100,000 | | $ 674,900 | | $ 1,374,000 | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 420.65 sq. ft. | | $ 249.78 sq. ft. | | $ 212.33 sq. ft. | |
| Data Source(s) | | SMLS #170055302;DOM 43 | | SMLS #170143185;DOM 115 | | SMLS #170191860;DOM 0 | |
| Verification Source(s) | | Town Assessor | | Town Assessor | | Town Assessor | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | Conv;0 | | Conv;0 | | Conv;0 | |
| Date of Sale/Time | | s07/18;c05/18 | | s05/19;c03/19 | | s05/19;c05/19 | |
| Location | N;Res;Rt-7Noise | A;BsyRd; | 0 | N;Res; | 0 | N;Res; | 0 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 5.71 ac | 3.06 ac | 13,000 | 4.25 ac | 0 | 3.17 ac | 10,800 |
| View | B;Wtr;River | B;Wtr;Lake | 0 | N;Woods; | 67,490 | B;Wtr;Pond | 0 |
| Design (Style) | DT2.0;Colonial | DT1.25;Cape | 0 | DT2.0;Colonial | | DT2.0;Colonial | |
| Quality of Construction | Q4 | Q3 | -110,000 | Q4 | | Q3 | -137,400 |
| Actual Age | 83 | 51 | 0 | 42 | 0 | 14 | 0 |
| Condition | C3 | C2 | -110,000 | C3 | | C2 | -137,400 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 17 7 4.1 | 8 4 2.1 | 20,000 | 8 3 2.1 | 20,000 | 11 5 5.2 | -15,000 |
| Gross Living Area | 65 5,582 sq. ft. | 2,615 sq. ft. | 193,000 | 2,702 sq. ft. | 187,000 | 6,471 sq. ft. | -58,000 |
| Basement & Finished | 986sf0sfwo | 788sf0sfwo | 0 | 1400sf536sfwo | -7,500 | 1604sf1468sfwo | -18,000 |
| Rooms Below Grade | | | | 0rr0br1.0ba1o | 0 | 1rr0br0.0ba0o | 0 |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Central/CAC | Central/CAC | | Central/None | 7,500 | Central/CAC | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 2gd6dw | 2gd6dw | | 2gbi6dw | 0 | 2gd6dw | |
| Porch/Patio/Deck | Porch, 1 Fpl | Similar | 0 | Similar | 0 | Similar | 0 |
| Other | None | None | | None | | None | |
| Net Adjustment (Total) | | ☒+ ☐- $ | 6,000 | ☒+ ☐- $ | 274,490 | ☐+ ☒- $ | 355,000 |
| Adjusted Sale Price | | Net Adj. 0.5% % | | Net Adj. 40.7% | | Net Adj. -25.8% | |
| of Comparables | | Gross Adj. 40.5% $ | 1,106,000 | Gross Adj. 42.9% $ | 949,390 | Gross Adj. 27.4% $ | 1,019,000 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)  Town Assessor
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)  Town Assessor
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | Town Assessor | Town Assessor | Town Assessor | Town Assessor |
| Effective Date of Data Source(s) | 06/17/2019 | 06/17/2019 | 06/17/2019 | 06/17/2019 |

Analysis of prior sale or transfer history of the subject property and comparable sales  No other transfer of the subject property or listing found within the last 3 years unless noted above. No transfer of any of the comparables utilized within the last year unless noted above.

Summary of Sales Comparison Approach.  See Attached Addendum.

Indicated Value by Sales Comparison Approach $ 975,000

Indicated Value by:  Sales Comparison Approach $ 975,000   Cost Approach (if developed) $ 981,000   Income Approach (if developed) $
See Attached Addendum.

This appraisal is made ☒ "as is," ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  This report has been completed "as is" and was made for use by the lender/client and or their assigns for mortgage purposes only.
Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 975,000 as of 06/17/2019 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005          UAD Version 9/2011          Produced using ACI software, 800.234.8727 www.aciweb.com          Page 2 of 6          Fannie Mae Form 1004 March 2005 / 1004_05UAD 17/82015

Flax Appraisals

APPRAISAL REPORT

## Uniform Residential Appraisal Report

19VS23950
File No. s-50569

**COMMENT ON USE OF COST APPROACH**

Unless the intended use of this appraisal specifically includes issues of property insurance coverage, this appraisal should not be used for such purposes. Reproduction or Replacement cost figures used in the cost approach are for valuation purposes only, given the intended use of the assignment. The Definition of Value used in this assignment is unlikely to be consistent with the definition of Insurable Value for the property insurance coverage/use.

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value) The estimated site value is derived from one or combination of the following; local land sales, effective land sales from tear downs, extracted land sales from new construction/newer homes and from town assessment ratios. Data sources utilized are MLS, Assessor.

| | | | | | | |
|---|---|---|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | | = $ | 400,000 |
| Source of cost data See Attached Addendum. | Dwelling | 5,582 Sq. Ft. @ $ | 100.00 | | = $ | 558,200 |
| Quality rating from cost service Q4 Effective date of cost data 2019 | Bsmt: 986 | Sq. Ft. @ $ | 50.00 | | = $ | 49,300 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Porch | | | | | 15,000 |
| Cost Approach performed per client's request. Construction costs | Garage/Carport 430 | Sq. Ft. @ $ | 40.00 | | = $ | 17,200 |
| based on various estimating guides and contractors' estimates. | Total Estimate of Cost-New | | | | ............ = $ | 639,700 |
| Physical depreciation based on the age-life method and calculated | Less 50 Physical | Functional | External | | | |
| at 12%, with an estimated remaining economic life of 63 years. | Depreciation 12% | 0% | 5% | | = $ ( | 108,749) |
| Due to a lack of available sites, land values typically exceed 30% | Depreciated Cost of Improvements | | | | = $ | 530,951 |
| in the market. No functional or external obsolescence noted. | "As-is" Value of Site Improvements | | | | = $ | 50,000 |
| Estimated Remaining Economic Life (HUD and VA only) 63 Years | INDICATED VALUE BY COST APPROACH | | | | = $ | 981,000 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| | | |
|---|---|---|
| Estimated Monthly Market Rent $ | X Gross Rent Multiplier = $ | Indicated Value by Income Approach |

Summary of Income Approach (including support for market rent and GRM)

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No Unit type(s) ☐ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal name of project

| | |
|---|---|
| Total number of phases Total number of units | Total number of units sold |
| Total number of units rented Total number of units for sale | Data source(s) |

Was the project created by the conversion of an existing building(s) into a PUD? ☐ Yes ☐ No If Yes, date of conversion.

Does the project contain any multi-dwelling units? ☐ Yes ☐ No Data source(s)

Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

APPRAISAL REPORT

## Uniform Residential Appraisal Report

19VS23950
File No. s-50569

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1.  The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2.  The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3.  The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.  The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5.  The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6.  The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

APPRAISAL REPORT

## Uniform Residential Appraisal Report

19VS23950
File No. S-50569

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1.  I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2.  I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3.  I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4.  I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5.  I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6.  I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7.  I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8.  I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9.  I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

APPRAISAL REPORT

## Uniform Residential Appraisal Report

19VS23950
File No. s-50569

22.  I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations.  Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23.  The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25.  Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:**  The Supervisory Appraiser certifies and agrees that:

1.   I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2.   I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3.   The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4.   This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5.   If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name Robert T. Lydon | Name |
| Company Name Flax Appraisals | Company Name |
| Company Address 1111 East Putnam Ave Suite 300 | Company Address |
| Riverside, CT 06878 | |
| Telephone Number 203-698-8800 | Telephone Number |
| Email Address info@flaxappraisals.com | Email Address |
| Date of Signature and Report 06/25/2019 | Date of Signature |
| Effective Date of Appraisal 06/17/2019 | State Certification # |
| State Certification # RCR.0000719 | or State License # |
| or State License # | State |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License |
| State CT | |
| Expiration Date of Certification or License 04/30/2020 | |

| | |
|---|---|
| ADDRESS OF PROPERTY APPRAISED | SUBJECT PROPERTY |
| 19 Sugar Hollow Rd | ☐ Did not inspect subject property |
| Wilton, CT  06897 | ☐ Did inspect exterior of subject property from street |
| | Date of Inspection _____ |
| APPRAISED VALUE OF SUBJECT PROPERTY $ 975,000 | ☐ Did inspect interior and exterior of subject property |
| | Date of Inspection _____ |
| LENDER/CLIENT | |
| Name Nations Valuation Services | COMPARABLE SALES |
| Company Name United Bank Connecticut, ISAOA/ATIMA | ☐ Did not inspect exterior of comparable sales from street |
| Company Address 1645 Ellington Road | ☐ Did inspect exterior of comparable sales from street |
| South Windsor, CT 06074 | Date of Inspection _____ |
| Email Address | |

Freddie Mac Form 70 March 2005          UAD Version 9/2011          Produced using ACI software, 800.234.8727 www.aciweb.com          Fannie Mae Form 1004 March 2005
Page 6 of 6          1004_05UAD 12182015

Flax Appraisals

APPRAISAL REPORT

## Uniform Residential Appraisal Report

19VS23950
File No. s-50569

| FEATURE | SUBJECT | | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|---|
| | 19 Sugar Hollow Rd | | 14 Pelham Ln | | 70 Linden Tree Rd | | 9 Mtn Rd | |
| Address Wilton, CT 06897 | | | Ridgefield, CT 06877 | | Wilton, CT 06897 | | Wilton, CT 06897 | |
| Proximity to Subject | | | 1.16 miles SW | | 3.96 miles SW | | 0.43 miles SE | |
| Sale Price | $ | | | $ 787,500 | | $ 725,000 | | $ 1,099,000 |
| Sale Price/Gross Liv. Area | $ | 0.00 sq. ft. | $ 190.36 sq. ft. | | $ 287.70 sq. ft. | | $ 223.24 sq. ft. | |
| Data Source(s) | | | SMLS #170095927;DOM 332 | | SMLS #170120171;DOM 146 | | SMLS #170153349;DOM 161 | |
| Verification Source(s) | | | Town Assessor | | Town Assessor | | Town Assessor | |
| VALUE ADJUSTMENTS | DESCRIPTION | | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | | ArmLth | | ArmLth | | Listing | |
| Concessions | | | Conv;0 | | Conv;0 | | ;0 | |
| Date of Sale/Time | | | s05/19;c05/19 | | s02/19;c02/19 | | Active | -44,000 |
| Location | N;Res;Rt-7Noise | | N;Res; | 0 | N;Res; | 0 | N;Res; | 0 |
| Leasehold/Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 5.71 ac | | 2.01 ac | 34,000 | 2.04 ac | 33,400 | 1.01 ac | 54,000 |
| View | B;Wtr;River | | B;Wtr;SmPond | 59,000 | B;Wtr;Pond | 0 | N;Res; | 55,000 |
| Design (Style) | DT2.0;Colonial | | DT2.0;Colonial | | DT2.0;Colonial | | DT2.0;Colonial | |
| Quality of Construction | Q4 | | Q4 | | Q4 | | Q4 | |
| Actual Age | 83 | | 50 | 0 | 54 | 0 | 71 | 0 |
| Condition | C3 | | C3 | | C3 | | C2 | -109,900 |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths |
| Room Count | 17 | 7 | 4.1 | 13 | 5 | 3.1 | 10,000 | 8 | 4 | 2.1 | 20,000 | 10 | 4 | 4.1 | 0 |
| Gross Living Area | 65 | | 5,582 sq. ft. | | 4,137 sq. ft. | 94,000 | 2,520 sq. ft. | 199,000 | 4,923 sq. ft. | 43,000 |
| Basement & Finished | 986sf0sfwo | | 0sf | 5,000 | 1000sf200sfin | 0 | 1292sf415sfin | -5,500 |
| Rooms Below Grade | | | | | 1rr0br0.0ba0o | 0 | 2rr0br0.1ba0o | -5,000 |
| Functional Utility | Average | | Average | | Average | | Average | |
| Heating/Cooling | Central/CAC | | Central/CAC | | Central/None | 7,500 | Central/CAC | |
| Energy Efficient Items | None | | None | | None | | None | |
| Garage/Carport | 2gd6dw | | 2ga2gd6dw | -20,000 | 2gd6dw | | 2ga6dw | 0 |
| Porch/Patio/Deck | Porch, 1 Fpl | | Similar | 0 | Similar | 0 | Similar | 0 |
| Other | None | | Pool, Loft | -25,000 | None | | None | |
| | | | | | | | | |
| Net Adjustment (Total) | | | [X] + [ ] - | $ 157,000 | [X] + [ ] - | $ 259,900 | [ ] + [X] - | $ 12,400 |
| Adjusted Sale Price | | | Net Adj. 19.9% | | Net Adj. 35.8% | | Net Adj. -1.1% | |
| of Comparables | | | Gross Adj. 31.4% | $ 944,500 | Gross Adj. 35.8% | $ 984,900 | Gross Adj. 28.8% | $ 1,086,600 |
| ITEM | | SUBJECT | | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 |
| Date of Prior Sale/Transfer | | | | | | | | |
| Price of Prior Sale/Transfer | | | | | | | | |
| Data Source(s) | | Town Assessor | | Town Assessor | | Town Assessor | | Town Assessor |
| Effective Date of Data Source(s) | | 06/17/2019 | | 06/17/2019 | | 06/17/2019 | | 06/17/2019 |

Summary of Sales Comparison Approach   See attached addendum....

APPRAISAL REPORT

## Uniform Residential Appraisal Report

19VS23950
File No. s-50569

| FEATURE | SUBJECT | | COMPARABLE SALE NO. 7 | | COMPARABLE SALE NO. 8 | | COMPARABLE SALE NO. 9 | |
|---|---|---|---|---|---|---|---|---|
| Address | 19 Sugar Hollow Rd | | 357 Newtown Tpke | | | | | |
| | Wilton, CT 06897 | | Weston, CT 06883 | | | | | |
| Proximity to Subject | | | 5.51 miles SE | | | | | |
| Sale Price | $ | | $ 998,000 | | $ | | $ | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | | $ 392.14 sq. ft. | | sq. ft. | | sq. ft. | |
| Data Source(s) | | | SMLS #170191195;DOM 41 | | | | | |
| Verification Source(s) | | | Town Assessor | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | | Listing | | | | | |
| Concessions | | | ;0 | | | | | |
| Date of Sale/Time | | | Active | -39,900 | | | | |
| Location | N;Res;Rt-7Noise | | A;BsyRd; | 0 | | | | |
| Leasehold/Fee Simple | Fee Simple | | Fee Simple | | | | | |
| Site | 5.71 ac | | 3.09 ac | 12,400 | | | | |
| View | B;Wtr;River | | B;Wtr;Pond | 0 | | | | |
| Design (Style) | DT2.0;Colonial | | DT1.0;Ranch | 0 | | | | |
| Quality of Construction | Q4 | | Q4 | | | | | |
| Actual Age | 83 | | 99 | 0 | | | | |
| Condition | C3 | | C3 | | | | | |
| Above Grade | Total | Bdrms | Baths | Total | Bdrms | Baths | | | Total | Bdrms | Baths | | Total | Bdrms | Baths |
| Room Count | 17 | 7 | 4.1 | 8 | 2 | 3.1 | 10,000 | | | | | | | |
| Gross Living Area | 65 | 5,582 sq. ft. | 2,545 sq. ft. | 197,500 | sq. ft. | | sq. ft. | |
| Basement & Finished | 986sf0sfwo | | 976sf704sfwo | -7,000 | | | | |
| Rooms Below Grade | | | 0rr2br1.0ba0o | -10,000 | | | | |
| Functional Utility | Average | | Average | | | | | |
| Heating/Cooling | Central/CAC | | Central/CAC | | | | | |
| Energy Efficient Items | None | | None | | | | | |
| Garage/Carport | 2gd6dw | | 2gd6dw | | | | | |
| Porch/Patio/Deck | Porch, 1 Fpl | | Similar | 0 | | | | |
| Other | None | | Guest Hse | -50,000 | | | | |
| | | | | | | | | |
| Net Adjustment (Total) | | | [X] + [ ] - | $ 113,000 | [X] + [ ] - | $ 0 | [X] + [ ] - | $ 0 |
| Adjusted Sale Price | | | Net Adj. 11.3% | | Net Adj. 0.0% | | Net Adj. 0.0% | |
| of Comparables | | | Gross Adj. 32.7% | $ 1,111,000 | Gross Adj. 0.0% | $ 0 | Gross Adj. 0.0% | $ 0 |
| ITEM | | SUBJECT | COMPARABLE SALE NO. 7 | | COMPARABLE SALE NO. 8 | | COMPARABLE SALE NO. 9 | |
| Date of Prior Sale/Transfer | | | | | | | | |
| Price of Prior Sale/Transfer | | | | | | | | |
| Data Source(s) | | Town Assessor | Town Assessor | | | | | |
| Effective Date of Data Source(s) | | 06/17/2019 | 06/17/2019 | | | | | |

Summary of Sales Comparison Approach

SALES COMPARISON APPROACH

APPRAISAL REPORT

## Uniform Appraisal Dataset Definitions

19VS23950
File No. s-50569

### Condition Ratings and Definitions

**C1** The improvements have been very recently constructed and have not previously been occupied. The entire structure and all components are new and the dwelling features no physical depreciation."

*Note: Newly constructed improvements that feature recycled materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100% new foundation and the recycled materials and the recycled components have been rehabilitated/re-manufactured into like-new condition. Recently constructed improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (i.e., newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).*

**C2** The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category either are almost new or have been recently completely renovated and are similar in condition to new construction.

*Note: The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.*

**C3** The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

*Note: The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation.*

**C4** The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

*Note: The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.*

**C5** The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

*Note: Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.*

**C6** The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

*Note: Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.*

### Quality Ratings and Definitions

**Q1** Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

**Q2** Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residences constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high-quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

**Q3** Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

**Q4** Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

**Q5** Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

**Q6** Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure.

### Definitions of Not Updated, Updated, and Remodeled

**Not Updated**

Little or no updating or modernization. This description includes, but is not limited to, new homes.
Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

**Updated**

The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.
An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

**Remodeled**

Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/ or expansion.
A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of square footage). This would include a complete gutting and rebuild.

### Explanation of Bathroom Count

The number of full and half baths is reported by separating the two values by a period. The full bath is represented to the left of the period. The half bath count is represented to the right of the period. Three-quarter baths are to be counted as a full bath in all cases. Quarter baths (baths that feature only toilet) are not to be included in the bathroom count.

APPRAISAL REPORT

## Uniform Appraisal Dataset Definitions

19VS23950
File No. s-50569

### Abbreviations Used In Data Standardization Text

| Abbrev. | Full Name | Appropriate Fields | Abbrev. | Full Name | Appropriate Fields |
|---|---|---|---|---|---|
| ac | Acres | Area, Site | In | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| AdjPrk | Adjacent to Park | Location | Lndfll | Landfill | Location |
| AdjPwr | Adjacent to Power Lines | Location | LtdSght | Limited Sight | View |
| A | Adverse | Location & View | Listing | Listing | Sale or Financing Concessions |
| ArmLth | Arms Length Sale | Sale or Financing Concessions | MR | Mid-Rise Structure | Design(Style) |
| AT | Attached Structure | Design(Style) | Mtn | Mountain View | View |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade | N | Neutral | Location & View |
| br | Bedroom | Basement & Finished Rooms Below Grade | NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| B | Beneficial | Location & View | op | Open | Garage/Carport |
| BsyRd | Busy Road | Location | o | Other | Basement & Finished Rooms Below Grade |
| cp | Carport | Garage/Carport | O | Other | Design(Style) |
| Cash | Cash | Sale or Financing Concessions | Prk | Park View | View |
| CtySky | City View Skyline View | View | Pstrl | Pastoral View | View |
| CtyStr | City Street View | View | PwrLn | Power Lines | View |
| Comm | Commercial Influence | Location | PubTrn | Public Transportation | Location |
| c | Contracted Date | Date of Sale/Time | rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| Conv | Conventional | Sale or Financing Concessions | Relo | Relocation Sale | Sale or Financing Concessions |
| cv | Covered | Garage/Carport | REO | REO Sale | Sale or Financing Concessions |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions | Res | Residential | Location & View |
| DOM | Days On Market | Data Sources | RT | Row or Townhouse | Design(Style) |
| DT | Detached Structure | Design(Style) | RH | Rural Housing - USDA | Sale or Financing Concessions |
| dw | Driveway | Garage/Carport | SD | Semi-detached Structure | Design(Style) |
| Estate | Estate Sale | Sale or Financing Concessions | s | Settlement Date | Date of Sale/Time |
| e | Expiration Date | Date of Sale/Time | Short | Short Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions | sf | Square Feet | Area, Site, Basement |
| g | Garage | Garage/Carport | sqm | Square Meters | Area, Site, Basement |
| ga | Garage - Attached | Garage/Carport | Unk | Unknown | Date of Sale/Time |
| gbi | Garage - Built-In | Garage/Carport | VA | Veterans Administration | Sale or Financing Concessions |
| gd | Garage - Detached | Garage/Carport | wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| GR | Garden Structure | Design(Style) | wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
| GlfCse | Golf Course | Location | WtrFr | Water Frontage | Location |
| Glfvw | Golf Course View | View | Wtr | Water View | View |
| HR | High Rise Structure | Design(Style) | w | Withdrawn Date | Date of Sale/Time |
| Ind | Industrial | Location & View | Woods | Woods View | View |

### Other Appraiser-Defined Abbreviations

| Abbrev. | Full Name | Appropriate Fields | Abbrev. | Full Name | Appropriate Fields |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

Case 19-51232    Doc 33    Filed 03/02/20    Entered 03/02/20 15:50:39    Page 23 of 52

ADDENDUM

| Borrower: Dale Morgado | | File No.: s-50569 |
|---|---|---|
| Property Address: 19 Sugar Hollow Rd | | Case No.: 19VS23950 |
| City: Wilton | State: CT | Zip: 06897 |
| Lender: United Bank Connecticut, ISAOA/ATIMA | | |

**Neighborhood Market Conditions**
Overall market conditions are showing signs of stabilization after a period of declining values. Supply appears to be trending towards normal levels at this time. Interest rates have currently remained stable and conventional financing is available to qualified buyers. The average marketing time for properties in the subject's neighborhood is between three and six months.

**Highest and Best Use**
Given the subject's zoning, the subject's highest and best use is it's current use as a single family residence. The four tests used in the analysis of highest and best use of a property are (1) legally permissible, (2) physically possible, (3) financially feasible and (4) maximum profitability. The subject's present zoning classification is consistent with the current use and surrounding land uses. The subject's site is typical in size, shape and topography for residential dwellings. Therefore, the Highest and Best Use both vacant and improved, is Residential/SFR.

**Site Comments**
Your appraiser is not deemed to be an expert in this field and suggests that a full qualified individual that is an expert in easements, encroachments, environmental conditions, land uses, etc. be consulted. Normal public utility easements and setbacks.

Properties in the subject market typically have private water and/or sewage systems (well & septic) and are not deemed adverse to marketability. There was not any seepage from the septic noted at inspection. City water and sewer are not available to the subject.

The subject property offers well manicured and useable lawn. The site is further enhanced by mature plantings and a riverfront setting.

The appraiser has not been trained to analyze FEMA maps and a FEMA certificate is recommended to confirm the subject's flood zone.

The total acreage is made of of 2 separate but contiguous parcels which are deeded together. The site was valued as one parcel for the purposes of this report, however it was reported that Parcel 2 is a buildable lot.

**Additional Features**
In addition the property offers CAC, a fireplace, moldings and millwork, stone kitchen counters and a large porch off the back.

Amenities which are not permanently affixed to the real estate are considered items of personal property. Items of personal property are not included in the valuation analyses as amenities. Items which may be included within the category of personal property are detached sheds (with no permanent foundations and/or wood burning stoves).

**Physical Deficiencies or Adverse Conditions**
No apparent adverse conditions were noted. Your appraiser has not been trained in this field and is not considered an expert as to testify on the livability, soundness or structural integrity of the subject property. If a full building inspection is required for this transaction then a licensed building inspector should be contracted to perform one. All utilities and appliances were on and functioning at inspection.

**Lead-Based Paint Disclosure**
Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women.

**Comments on Sales Comparison**

Per the scope of work for this assignment, this appraisal has been completed in compliance with the Uniform Dataset (UAD) from Fannie Mae and Freddie Mac. The UAD requires the use of standardized responses that include specific formats, definitions, abbreviations and acronyms. While performing the research for the subject and comparables utilized in this report your appraiser attempted to obtain the most accurate and detailed level of information available during the normal course of business. As a result of the nature of the required UAD standardized responses, specifically those in which your appraiser does not have the ability to personally verify or measure firsthand, could cause the reader of this report to mistakenly assume a greater precision and reliability in the data than is factually correct or typical in the normal course of business. While the data and information obtained during the normal course of business is considered to be true and reliable, as it is in large part third party data, the exact precision of the data is unknown and cannot be further verified first hand by your appraiser during the normal course of business. Examples include contract dates and condition and quality ratings of the comparables. This necessary comparable data is typically obtained from third party sources which include MLS, Town field cards, Realist.com and real estate agents. Consequently, this information should be considered an "estimate" unless otherwise noted that your appraiser has firsthand knowledge of the comparable property.

When searching for comparables the first set of MLS parameters were for all river, lake and pondfront sales within the past 90 days, within 1 mile of the subject, with a GLA between 4466 sf and 6699 sf and lot size between 3.70 acres and 7.70 acres. This was then expanded to include all sales from past 6 months and then all sales from past 12 months. This still did not provide enough market data and thus parameters were expanded to include all sales from the past 12 months, located in all competing areas of town as well as the bordering towns of Weston, Redding and Ridgefield, with a GLA between 2500 sf and 8500 sf and lot size between 1 acre and 15 acres.

Addendum Page 1 of 3

ADDENDUM

| Borrower: Dale Morgado | | File No.: s-50569 |
|---|---|---|
| Property Address: 19 Sugar Hollow Rd | | Case No.: 19VS23950 |
| City: Wilton | State: CT | Zip: 06897 |
| Lender: United Bank Connecticut, ISAOA/ATIMA | | |

Due to the overall limited number of transfers of ideally similar comparables within the subject area your appraiser was forced to expand search parameters while attempting to locate comparable properties. As a result comparables which exceed guidelines and have sold over 3 months before the effective date of this report had to be utilized. After an exhaustive search the comparables which were deemed to be the best indicators of the subject value and the most similar overall were utilized. The subject's river frontage, large GLA and large acreage resulted in the need for multiple adjustments to most comparables with certain adjustments exceeding FNMA guidelines.Comparables within one mile of the subject property have been utilized. Except when comparables which exceed the mileage guideline are deemed most indicative of the subjects' market value. Given the subject location near town boundaries and different neighborhoods it is not unusual for comparables to be located over 1 mile away.

Comparables which have closed within the last six months have been utilized. Except when comparables which have closed beyond the guideline or are active/pending were deemed most indicative of the subjects' market value. Given the relatively stable market over the past year the use of sales over 6 months old is not considered to have an adverse impact on the accuracy of the subject valuation in this report.

Despite being located across major roads or boundaries all the comparables were considered to be in the same or a similar neighborhood as the subject.

All quantifiable adjustments reflected w/in the grid were derived; IE a paired sales analysis of the bracketed sales contained w/in the report; paired sales w/in the 1004MC; historical sales analysis retained w/in the appraiser's work files; discussions w/ local Realtors in conjunction w/ the appraiser's geographical competency and years of experience; or a combination thereof.

Comparables 6 & 7 are active listings and were adjusted downward 4% to represent a negotiated sale price.

When deemed necessary a $20,000/acre site adjustment has been utilized to reflect differences in land area of 2.0 acres or greater.

The estimated ratings for quality of construction, effective age and condition for the comparables are made based on exterior observations of the comparables, MLS listing descriptions, MLS online photos, extraction from market data, and/or knowledge of the contractor/builder involved in the construction of said dwelling. These ratings are the basis for any adjustments which were applied to the comparables as they are compared against the ratings established for the subject.

When necessary a 5-10% adjustment was utilized for every Q-level (quality of construction) difference between a comparable and the subject. It should be noted that there is a rating range within a Q-level rating. For example a property could be closer in condition to either the next higher or the next lower Q-level, therefore warranting an adjustment. This would explain any adjustments when a comparable has the same Q-level rating as the subject.

Although the comparables and the subject offer different actual ages, adjustments were only made when deemed necessary. For comparables which offer a different age than the subject and no age adjustment was deemed necessary a 0 in the adjustment area has been utilized to show that it was intended to not make an adjustment in this section.

When necessary a 2.5-10% adjustment was utilized for every C-level (condition) difference between a comparable and the subject. It should be noted that there is a rating range within a C-level rating. For example a property could be closer in condition to either the next higher or the next lower C-level, therefore warranting an adjustment. This would explain any adjustments when a comparable has the same C-level rating as the subject.

Where the difference in GLA of the subject property and that of the comparable is greater than 250 sf, an adjustment of $65/sf has been utilized. The basement adjustments were made at $5/sf for differences of 250 sf or greater of unfinished area and $10/sf for differences of 250 sf or greater of finished area. All GLA adjustments have been rounded to the nearest $500.

It should be noted that per UAD requirements it is necessary to note detailed information about the basement amenities of the comparables; including the size of basements, size of the finished area if any, types of rooms, and access (interior access only, walk out or walk up). Typically this information is not readily available via available data sources nor is it easily verifiable. While your appraiser has attempted to verify such information, the accuracy of such verification is not always reliable, and is often subject to interpretation and is not necessarily based on specific verifiable data. This is not to say that the data which is readily available is not adequate to determine accurate adjustments as this has been the normal course of business prior to UAD, it is that the UAD requirements call for much more specific data than what had been acceptable business practices within the area. As a result your appraiser might need to make a best case assumption as to the specifics of these features. A finished basement amenity typically commands a premium in the market place. Thus your appraiser has made adjustments to the basements, if necessary, but only to those features which are deemed to have an effect on market value. Minor differences in basement area and finished areas, as well as number of finished rooms in the basements typically do not have an effect on value.

All comparable sales were inspected on a drive-by basis at minimum and the photos in the report display an accurate description of their current condition and appeal.

As a result of the reporting requirements for UAD reports, it is required that on the porch/patio/deck line of the sales grid, the actual porches, decks, patios, etc... be noted for each comparable. Due to this requirement your appraiser, was forced to make a best estimate as to what of these amenities, each comparable offers. The number of or the existence of, these type of amenities, are not always clearly disclosed on the data sources utilized. Thus even though there might be a difference in number of and type of amenity noted in the sales grid between the subject and comparables, it will not in most cases result in an adjustment needed. When no adjustment is deemed necessary for these differences a 0 in the adjustment area will be utilized to show that it was intended to not make an adjustment in this section.

ADDENDUM

| Borrower: Dale Morgado | | File No.: s-50569 |
|---|---|---|
| Property Address: 19 Sugar Hollow Rd | | Case No.: 19VS23950 |
| City: Wilton | State: CT | Zip: 06897 |
| Lender: United Bank Connecticut, ISAOA/ATIMA | | |

Whenever a discrepancy exists between MLS and assessor data, the most reasonable and logical information is utilized in the report. For example, MLS information for room counts is deemed more reliable due to the agent having inspected the interior of the dwelling, while assessor data is deemed more reliable for GLA due to agents typically adding finished basement area to their MLS listings. This may vary from town to town due to differences in accuracy of some assessor databases. The new MLS system does not provide room locations as the old system did, therefore above grade and basement room counts were estimated given the appraiser's readily available data.

The comparables utilized were the best available as of the effective date of this report. The comparables, as adjusted, illustrate a reasonable range of value for deriving an estimated fair market value of the subject property. The comparable data is considered to be true and reliable and all adjustments are market supported.

**Final Reconciliation**

Final reconciliation is primarily based on the Sales Comparison Approach as it is derived from the most reliable market data. The Cost Approach has been calculated per the client's request, although is derived from less reliable market data as compared to the Sales Comparison Approach and therefore given less emphasis. The Income Approach has been considered although was not developed due to the lack of reliable market data needed to calculate a true GRM. The marketing/exposure time for the subject property is deemed to be 3-6 months.

Exposure time is always presumed to precede the effective date of the appraisal. It is the estimated length of time the property would have been offered on the market, prior to the hypothetical sale, at the appraised value, on the effective date of the appraisal. It is a retrospective estimate based on an analysis of past events assuming a competitive and open market. This includes not only adequate, sufficient and reasonable time, but adequate, sufficient and reasonable effort. It is often expressed as a range and is based on the following:

1. Statistical information about days on the market, most commonly obtained from the local Multiple Listing Service.

2. Information gathered through sales verification.

3. Interviews with market participants.

Under current market conditions, the reasonable exposure time for the subject property is approximately three to six months. This is based on the analyses of current market trends in the general area and takes into account the size, condition and price range of the subject property and surrounding area. It presupposes that the listed price would be at or near the appraised value. It also assumes aggressive professional marketing by reputable local real estate offices.

The final value estimate for the subject property does not represent the predominant value for residential properties in this market area, as shown on page 1 of the report. The subject property is within the stated price range for homes in this area; and the fact that the subject property does not represent the predominant value has no adverse effect on the subject's value or marketability. The subject is not considered an overimprovement for the area.

**Sale 2 was given extra weight for it's views and acreage. Sale 3 was given extra weight for it's large GLA. Sale 4 was given extra weight for proximity. The subject value was then reconciled toward their mid range adjusted prices. The active listings were given no weight toward the final value. All of the subject's defining characteristics were bracketed by the comparables in the report.**

**Source of Cost Data**
www.dwellingcost.com
http://www.corelogic.com/solutions/marshall-swift.aspx

**Extra Comments**
**Purpose of the Appraisal Report**
This appraisal report is intended for use by the lender and/or their successors and assigns for mortgage lending purpose only. This report is not intended for any other use.

Information, estimates and opinions furnished to the appraiser and contained in the report, were obtained from sources considered to be reliable, and believe to be true and correct.

**Electronic Signatures**
The signatures contained in this report are secured original signatures. Only this office has the ability to add or remove these secured signatures.

**Intended Users**
The Intended User of this appraisal report is the lender/client. The Intended Use to evaluate the property that is the subject of this appraisal for a mortgage finance transaction, subject to the stated Scope of Work purpose of the appraisal, reporting requirements of this appraisal report form, and the definition of Market Value. No additional Intended Users are identified by the appraiser.

**Appraiser Independence**
I certify, as the appraiser, that all aspects of this report were completed, including reconciling the opinion of value, free of influence from the client, client's representatives, borrower, or any other party to this transaction.

APPRAISAL REPORT

## Market Conditions Addendum to the Appraisal Report

19VS23950
File No. s-50569

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address 19 Sugar Hollow Rd | | City Wilton | | | State CT | Zip Code 06897 | |

Borrower Dale Morgado

**Instructions:** The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | | Overall Trend | | |
|---|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 10 | 5 | 6 | Increasing | [X] Stable | | Declining |
| Absorption Rate (Total Sales/Months) | 1.67 | 1.67 | 2.00 | Increasing | [X] Stable | | Declining |
| Total # of Comparable Active Listings | NA | NA | 11 | Declining | Stable | | Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | NA | NA | 5.50 | Declining | Stable | | Increasing |
| Median Sale & List Price, DOM, Sale/List % | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | | Overall Trend | | |
| Median Comparable Sale Price | 950,600 | 931,480 | 945,668 | Increasing | [X] Stable | | Declining |
| Median Comparable Sales Days on Market | 100 | 119 | 104 | Increasing | [X] Stable | | Increasing |
| Median Comparable List Price | 998,130 | 968,740 | 983,500 | Increasing | [X] Stable | | Declining |
| Median Comparable Listings Days on Market | NA | NA | 78 | Declining | Stable | | Increasing |
| Median Sale Price as % of List Price | 95.00% | 96.00% | 96.00% | Increasing | [X] Stable | | Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | Yes | [X] No | | | Declining | [X] Stable | | Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.)
See Attached Addendum.

Are foreclosure sales (REO sales) a factor in the market? ☐ Yes [X] No   If yes, explain (including the trends in listings and sales of foreclosed properties).
No, foreclosure sales are not currently a factor in the subject market for the level of property similar to the subject.

Cite data sources for above information. SmartMLS

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
The current mortgage market conditions in general along with ongoing changes guidelines for the financial sector, further declines or absorption of current inventory followed by subsequent price reductions, can't be easily determined in this highly volatile environment. It also can't be specifically identified how current substantial volatility in credit markets and evaluation of mortgage risks will influence the subject neighborhood pricing. We have currently seen signs of stabilization.

**If the subject is a unit in a condominium or cooperative project, complete the following:** Project Name:

| Subject Project Data | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | | Overall Trend | | |
|---|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | | | | Increasing | Stable | | Declining |
| Absorption Rate (Total Sales/Months) | | | | Increasing | Stable | | Declining |
| Total # of Active Comparable Listings | | | | Declining | Stable | | Increasing |
| Months of Unit Supply (Total Listings/Ab. Rate) | | | | Declining | Stable | | Increasing |

Are foreclosure sales (REO sales) a factor in the project? ☐ Yes ☐ No   If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name Robert T. Lydon | Name |
| Company Name Flax Appraisals | Company Name |
| Company Address 1111 East Putnam Ave Suite 300 Riverside, CT 06878 | Company Address |
| State License/Certification # RCR.0000719   State CT | State License/Certification #   State |
| Email Address info@flaxappraisals.com | Email Address |

Case 19-51232   Doc 33   Filed 03/02/20   Entered 03/02/20 15:50:39   Page 27 of 52

ADDENDUM

| Borrower: Dale Morgado | | File No.: s-50569 |
|---|---|---|
| Property Address: 19 Sugar Hollow Rd | | Case No.: 19VS23950 |
| City: Wilton | State: CT | Zip: 06897 |
| Lender: United Bank Connecticut, ISAOA/ATIMA | | |

**Market Analysis: Seller Concessions Comments**
The Overall Trend boxes have been filled out based on your appraiser's local area knowledge and a review of all market data available via Local MLS, not just sales of properties deemed comparable to the subject.  The numerical data comparing each time period does not necessarily portray what your appraiser deems to be the correct current overall market trends, and as a result the market trends boxes checked above may not coincide with the data presented for each time period noted.  The numerical data presented for each time period  only represents the market activity for the sales and listings within the subject's immediate marketing area, which are deemed to be comparable properties to the subject. Any additional market activity of properties within the subject's immediate marketing area which are not deemed to be comparable to the subject was not included in the data presented for each time period. It should be noted that in some cases comparables utilized within this report may not be included in the numerical data presented for each time period, as they could be located outside of the subject's immediate marketing area. If this appraisal contains comparables located outside of the subject's immediate marketing area, there will be comments within the sales comparison approach that will explain why they were utilized.

Overall the current market is trending toward a normal supply of active properties. Pricing and marketing times for correctly priced and marketed properties is currently deemed to be stable at 3-6 months. In order to report accurate market conditions, a wider range of sales and listings other than those directly comparable to the subject were utilized to establish the market conditions reported on Page 1. The limited results of sales and listings directly comparable to the subject resulted in DOM (marketing time) in the 1004MC form that are different then results reported in the Neighborhood Characteristics section on Page1.

Addendum Page 1 of 1

APPRAISAL REPORT

**USPAP ADDENDUM**

19VS23950
File No. s-50569

| Borrower: Dale Morgado | | | | |
|---|---|---|---|---|
| Property Address: 19 Sugar Hollow Rd | | | | |
| City: Wilton | County: Fairfield | State: CT | Zip Code: 06897 | |
| Lender: United Bank Connecticut, ISAOA/ATIMA | | | | |

## APPRAISAL AND REPORT IDENTIFICATION

This report was prepared under the following USPAP reporting option:

☒ **Appraisal Report**    A written report prepared under Standards Rule 2-2(a).

☐ **Restricted Appraisal Report**    A written report prepared under Standards Rule 2-2(b).

### Reasonable Exposure Time

My opinion of a reasonable exposure time for the subject property at the market value stated in this report is: _____

Under current market conditions, the reasonable exposure time for the subject property is approximately three to six months. This is based on the analyses of current market trends in the general area and takes into account the size, condition and price range of the subject property and surrounding area. It presupposes that the listed price would be at or near the appraised value. It also assumes aggressive professional marketing by reputable local real estate offices.

### Additional Certifications

☒ I have performed NO services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

☐ I HAVE performed services, as an appraiser or in another capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment. Those services are described in the comments below.

### Additional Comments

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: | Signature: |
| Name: Robert T. Lydon | Name: |
| Date Signed: 06/25/2019 | Date Signed: |
| State Certification #: RCR.0000719 | State Certification #: |
| or State License #: | or State License #: |
| or Other (describe): _____ State #: _____ | State: |
| State: CT | Expiration Date of Certification or License: |
| Expiration Date of Certification or License: 04/30/2020 | Supervisory Appraiser inspection of Subject Property: |
| Effective Date of Appraisal: 06/17/2019 | ☐ Did Not   ☐ Exterior-only from street   ☐ Interior and Exterior |

SUBJECT PROPERTY PHOTO ADDENDUM

| | | |
|---|---|---|
| Borrower: Dale Morgado | | File No.:  s-50569 |
| Property Address: 19 Sugar Hollow Rd | | Case No.: 19VS23950 |
| City: Wilton | State: CT | Zip: 06897 |
| Lender: United Bank Connecticut, ISAOA/ATIMA | | |



**FRONT VIEW OF
SUBJECT PROPERTY**

Appraised Date: June 17, 2019
Appraised Value: $ 975,000



**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**

Extra Subject Photos

| Borrower: Dale Morgado | | File No.:  s-50569 |
|---|---|---|
| Property Address: 19 Sugar Hollow Rd | | Case No.: 19VS23950 |
| City: Wilton | State: CT | Zip: 06897 |
| Lender: United Bank Connecticut, ISAOA/ATIMA | | |



Living Room



Dining Room



Kitchen



Family Room



Den



Foyer



Laundry



Half Bath



Bath



Bath



Bath



Master Bath

Extra Subject Photos

| Borrower: Dale Morgado | | File No.: s-50569 |
|---|---|---|
| Property Address: 19 Sugar Hollow Rd | | Case No.: 19VS23950 |
| City: Wilton | State: CT | Zip: 06897 |
| Lender: United Bank Connecticut, ISAOA/ATIMA | | |



Master Bedroom



Bedroom



Bedroom



Bedroom



Bedroom



Bedroom



Bedroom



Office



Office



Rec Room



3rd Floor Rec Room



3rd Floor Rec Office

COMPARABLE PROPERTY PHOTO ADDENDUM

| Borrower: Dale Morgado | | File No.:  s-50569 |
|---|---|---|
| Property Address: 19 Sugar Hollow Rd | | Case No.: 19VS23950 |
| City: Wilton | State: CT | Zip: 06897 |
| Lender: United Bank Connecticut, ISAOA/ATIMA | | |



COMPARABLE SALE #1

579 Ridgefield Rd
Wilton, CT 06897
Sale Date: s07/18;c05/18
Sale Price: $ 1,100,000



COMPARABLE SALE #2

16 Georges Hull Hill Rd
Redding, CT 06896
Sale Date: s05/19;c03/19
Sale Price: $ 674,900



COMPARABLE SALE #3

87 Marchant Rd
Redding, CT 06896
Sale Date: s05/19;c05/19
Sale Price: $ 1,374,000

| Borrower: Dale Morgado | File No.: s-50569 | |
|---|---|---|
| Property Address: 19 Sugar Hollow Rd | Case No.: 19VS23950 | |
| City: Wilton | State: CT | Zip: 06897 |
| Lender: United Bank Connecticut, ISAOA/ATIMA | | |

 

 

 

INTERIOR PHOTOS

| Borrower: Dale Morgado | | File No.: s-50569 |
|---|---|---|
| Property Address: 19 Sugar Hollow Rd | | Case No.: 19VS23950 |
| City: Wilton | State: CT | Zip: 06897 |
| Lender: United Bank Connecticut, ISAOA/ATIMA | | |










COMPARABLE PROPERTY PHOTO ADDENDUM

| Borrower: Dale Morgado | | File No.: s-50569 |
|---|---|---|
| Property Address: 19 Sugar Hollow Rd | | Case No.: 19VS23950 |
| City: Wilton | State: CT | Zip: 06897 |
| Lender: United Bank Connecticut, ISAOA/ATIMA | | |



COMPARABLE SALE #4

14 Pelham Ln
Ridgefield, CT 06877
Sale Date: s05/19;c05/19
Sale Price: $ 787,500



COMPARABLE SALE #5

70 Linden Tree Rd
Wilton, CT 06897
Sale Date: s02/19;c02/19
Sale Price: $ 725,000



COMPARABLE SALE #6

9 Mtn Rd
Wilton, CT 06897
Sale Date: Active
Sale Price: $ 1,099,000

**LOCATION MAP**

| Borrower: Dale Morgado | File No.: s-50569 |
|---|---|
| Property Address: 19 Sugar Hollow Rd | Case No.: 19VS23950 |
| City: Wilton | State: CT    Zip: 06897 |
| Lender: United Bank Connecticut, ISAOA/ATIMA | |



Flax Appraisals 1111 E Putnam Ave Suite 300 Riverside, CT 06878 203-698-8800



**FLOORPLAN SKETCH**

| Borrower: Dale Morgado | | File No.: s-50569 |
| Property Address: 19 Sugar Hollow Rd | | Case No.: 19VS23950 |
| City: Wilton | State: CT | Zip: 06897 |
| Lender: United Bank Connecticut, ISAOA/ATIMA | | |

Sketch by Apex Sketch v5 Standard™

Flax Appraisals 1111 E Putnam Ave Suite 300 Riverside, CT 08878 203-698-8800

FLOORPLAN SKETCH

| Borrower: Dale Morgado | | File No.: s-50569 |
| Property Address: 19 Sugar Hollow Rd | | Case No.: 19VS23950 |
| City: Wilton | State: CT | Zip: 06897 |
| Lender: United Bank Connecticut, ISAOA/ATIMA | | |

## AREA CALCULATIONS SUMMARY

| Code | Description | Net Size | Net Totals |
|------|-------------|----------|------------|
| GLA1 | First Floor | 2706.0137 | 2706.0137 |
| GLA2 | Second Floor | 2428.9996 | 2428.9996 |
| GLA3 | Third Floor | 223.5000 | |
| | Third Floor | 223.5000 | 447.0000 |
| BSMT | Basement | 986.0000 | 986.0000 |
| GAR | Detached Garage | 430.0000 | 430.0000 |
| P/P | Porch | 320.0000 | 320.0000 |

Net LIVABLE Area    (rounded)    5582

## LIVING AREA BREAKDOWN

Breakdown

| | | | | Subtotals |
|---|---|---|---|---|
| **First Floor** | | | | |
| 0.5 x | 0.01 | x | 23.00 | 0.1145 |
| | 8.00 | x | 16.00 | 128.0000 |
| | 3.00 | x | 52.00 | 155.9999 |
| 0.5 x | 0.00 | x | 3.00 | 0.0017 |
| | 58.99 | x | 23.00 | 1356.7967 |
| | 3.00 | x | 10.00 | 30.0000 |
| | 30.00 | x | 26.00 | 779.9989 |
| | 85.00 | x | 3.00 | 254.9996 |
| 0.5 x | 0.01 | x | 23.00 | 0.1017 |
| **Second Floor** | | | | |
| | 59.00 | x | 16.08 | 948.9147 |
| | 6.92 | x | 47.00 | 325.0849 |
| | 3.00 | x | 52.00 | 156.0000 |
| | 3.00 | x | 73.00 | 219.0000 |
| | 30.00 | x | 26.00 | 780.0000 |
| **Third Floor** | | | | |
| | 11.17 | x | 20.00 | 223.5000 |
| | 11.18 | x | 20.00 | 223.5000 |

16 Items    (rounded)    5582

---

### First Floor                         GLA1

```
0.5  x    0.01  x    23.00  =     0.1145
          8.00  x    16.00  =   128.0000
          3.00  x    52.00  =   155.9999
0.5  x    0.00  x     3.00  =     0.0017
         58.99  x    23.00  =  1356.7967
          3.00  x    10.00  =    30.0000
         30.00  x    26.00  =   779.9989
         85.00  x     3.00  =   254.9996
0.5  x    0.01  x    23.00  =     0.1017
0.5  x   30.00  x     0.00  =     0.0006
```

Area total (rounded) =    2706

### Second Floor                        GLA2

```
59.00  x    16.08  =   948.9147
 6.92  x    47.00  =   325.0849
 3.00  x    52.00  =   156.0000
 3.00  x    73.00  =   219.0000
30.00  x    26.00  =   780.0000
```

Area total (rounded) =    2429

### Porch                               P/P

```
8.00  x    40.00  =  320.0000
```

Area total (rounded) =    320

### Third Floor                         GLA3

```
11.17  x    20.00  =  223.5000
```

Area total (rounded) =    224

FLOORPLAN SKETCH

| Borrower: Dale Morgado | | File No.: s-50569 | |
|---|---|---|---|
| Property Address: 19 Sugar Hollow Rd | | Case No.: 19VS23950 | |
| City: Wilton | | State: CT | Zip: 06897 |
| Lender: United Bank Connecticut, ISAOA/ATIMA | | | |

Third Floor             GLA3

   11.18  x    20.00  =  223.5000

Basement                          BSMT

  16.00  x    8.00  =  128.0000
  30.00  x   26.00  =  780.0000
   3.00  x   26.00  =   78.0000

Area total (rounded) =    224

Area total (rounded) =    986

Detached Garage         GAR

  21.50  x    20.00  =  430.0000

Area total (rounded) =    430

Flax Appraisals 1111 E Putnam Ave Suite 300 Riverside, CT 06878 203-698-8800

Subject Assessor Data Parcel 1 (12 67)

| | | |
|---|---|---|
| Borrower: Dale Morgado | | File No.: s-50569 |
| Property Address: 19 Sugar Hollow Rd | | Case No.: 19VS23950 |
| City: Wilton | State: CT | Zip: 06897 |
| Lender: United Bank Connecticut, ISAOA/ATIMA | | |

## Public Records & Tax Report

19 Sugar Hollow Rd, Wilton, CT 06897-4834

County: **Fairfield**

| | | | | | |
|---|---|---|---|---|---|
| Parcel Number: | 1922743 | Assessor's APN: | 12 67 | | |
| Census Block: | 1005 | Census Tract: | 045102 | Carrier Route: | R001 |
| Zoning: | R-1 | Latitude: | 41.262172 | Longitude: | -73.439047 |

Property Use Type: **Single Family / 1 Family Residence**

Current Ownership Information

| | |
|---|---|
| Owner(s): | **Blackacre Realty LLC** |
| How Related: | |
| Owner's Address: | 382 NE 191st St, Miami, FL 33179-3899 |
| Owner Occupied: | No |

| | | | |
|---|---|---|---|
| Closing Date: | 01/29/2015 | Sale Price: | $910,000 |
| Type of Deed: | Warranty | Recorded: | Vol: 2410, Page: 142 |

Most Recent Mortgage

| | | | |
|---|---|---|---|
| Date Originated: | 01/29/2015 | Amt. Borrowed: | $728,000 |
| | | Lender: | United Bank |

Transaction Details

| | | | |
|---|---|---|---|
| Type of Sale: | | | |
| Arms Length Sale: | | Nominal Sale: | |

GEORGETOWN
Map data @2019
Google

Most Recent Tax & Assessment Information

| | | | | | |
|---|---|---|---|---|---|
| Tax Amount: | $18,223.00 | Base Mil Rate: | 28.190 | Assessed Land Value: | $277,130 |
| | | Tax Dist. Mil Rate: | N/A | Assessed Building Value: | $369,320 |
| Tax Year: | July 2018-June 2019 | Total Mil Rate: | 28.190 | Total Assessed Value: | $646,450 |
| Fiscal Year: | 2018 | Municipal Tax District: | | Date of Last Update: | 06/25/18 |

Property Characteristics

**Lot & Exterior**

| | | | | | |
|---|---|---|---|---|---|
| Lot Size in Acres: | 3.70 | Lot Size in Sq Ft: | 161,172 | Common Ownership %: | |
| Type of Parking: | | # of Parking Spaces: | | | |

**General Construction:**

| | | | | | |
|---|---|---|---|---|---|
| # of Buildings: | 1 | Building Style: | Colonial | Year Built: | 1936 |
| Type of Construction: | | Building Condition: | Average | Last Major Renovation: | |
| Exterior Covering: | Wood Side/Shing | Type of Roof: | Gable | Roofing Material: | Shngls&Asphalt |
| Type of Basement: | Partially Done | Heating System: | Forced Air | Heating Fuel: | Oil |

**Building Size Information**

| | | | | | |
|---|---|---|---|---|---|
| Gross Building Sq Ft: | 8,792 | # of Units: | 1 | Unit is on Floor #: | |
| Living Area in Sq Ft: | 5,582 | First Floor Sq Ft: | | Attic Area in Sq Ft: | |

Aerial Photo of Subject Property & Site Dimensions-Parcel 2

| Borrower: Dale Morgado | | File No.: s-50569 |
|---|---|---|
| Property Address: 19 Sugar Hollow Rd | | Case No.: 19VS23950 |
| City: Wilton | State: CT | Zip: 06897 |
| Lender: United Bank Connecticut, ISAOA/ATIMA | | |



Subject Assessor Data Parcel 2 (12 67 1)

| Borrower: Dale Morgado | | File No.: s-50569 |
|---|---|---|
| Property Address: 19 Sugar Hollow Rd | | Case No.: 19VS23950 |
| City: Wilton | State: CT | Zip: 06897 |
| Lender: United Bank Connecticut, ISAOA/ATIMA | | |

**Public Records & Tax Report**

☐ **Sugar Hollow Rd, Wilton, CT 06897**                County:    **Fairfield**

| Parcel Number: | 2125961 | Assessor's APN: | 12 67 1 | Carrier Route: | |
|---|---|---|---|---|---|
| Census Block: | | Census Tract: | | | |
| Zoning: | R-1 | Latitude: | 41.260273 | Longitude: | -73.436259 |

Property Use Type:  **Lots and Land / Residential Open Land**

—— Current Ownership Information ——

| Owner(s): | **Blackacre Realty LLC** | | |
|---|---|---|---|
| How Related: | | | |
| Owner's Address: | 382 NE 191st St, Miami, FL 33179-3899 | | |
| Owner Occupied: | No | | |
| Closing Date: | 07/27/2000 | Sale Price: | **$210,000** |
| Type of Deed: | | Recorded: | **Vol: 1234, Page: 163** |
| Most Recent Mortgage | | Amt. Borrowed: | |
| Date Originated: | | Lender: | |
| Transaction Details | | | |
| Type of Sale: | | | |
| Arms Length Sale: | | Nominal Sale: | |

GEORGETOWN
Google   Map data ©2019
⬚ ⇄ ⌂ *Click Icon to view MLS Listings*

—— Most Recent Tax & Assessment Information ——

| Tax Amount: | $7,741.00 | Base Mil Rate: | 28.190 | Assessed Land Value: | $274,610 |
|---|---|---|---|---|---|
| | | Tax Dist. Mil Rate: | N/A | Assessed Building Value: | N/A |
| Tax Year: | July 2018-June 2019 | Total Mil Rate: | 28.190 | Total Assessed Value: | $274,610 |
| Fiscal Year: | 2018 | Municipal Tax District: | | Date of Last Update: | 06/25/18 |

—— Property Characteristics ——

Lot & Exterior
| Lot Size in Acres: | 2.01 | Lot Size in Sq Ft: | 87,556 | Common Ownership %: | |
|---|---|---|---|---|---|
| Type of Parking: | | # of Parking Spaces: | | | |

State Certification Page

| Borrower: Dale Morgado | | File No.: s-50569 |
|---|---|---|
| Property Address: 19 Sugar Hollow Rd | | Case No.: 19VS23950 |
| City: Wilton | State: CT | Zip: 06897 |
| Lender: United Bank Connecticut, ISAOA/ATIMA | | |

STATE OF CONNECTICUT ✦ DEPARTMENT OF CONSUMER PROTECTION

Be it known that

### ROBERT T LYDON

has been certified by the Department of Consumer Protection as a licensed

### CERTIFIED RESIDENTIAL REAL ESTATE APPRAISER

### License # RCR.0000719

Effective: 05/01/2019
Expiration: 04/30/2020

Michelle Seagull
Michelle Seagull, Commissioner

**AERIAL MAP**

| | |
|---|---|
| Borrower: Dale Morgado | File No.: s-50569 |
| Property Address: 19 Sugar Hollow Rd | Case No.: 19VS23950 |
| City: Wilton   State: CT | Zip: 06897 |
| Lender: United Bank Connecticut, ISAOA/ATIMA | |



Subject
19 Sugar Hollow Rd
Wilton, CT 06897

Aerial Photo of Subject Property & Site Dimensions-Parcel 1

| Borrower: Dale Morgado | | File No.: s-50569 |
|---|---|---|
| Property Address: 19 Sugar Hollow Rd | | Case No.: 19VS23950 |
| City: Wilton | State: CT | Zip: 06897 |
| Lender: United Bank Connecticut, ISAOA/ATIMA | | |

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF CONNECTICUT
(BRIDGEPORT)

IN RE: DALE J. MORGADO                          CASE NO. 19-51232 (JAM)
                    DEBTOR

CHAPTER 7

FEBRUARY 27, 2020

### AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

I, Stacey O'Sullivan, being duly sworn hereby depose and say:

1.      I am over the age of 18 years and understand the obligations of an oath.

2.      I am a Vice President of United Bank Residential Properties, Inc. (the "Movant"), the movant for relief in the above referenced petition.

3.      As such, I have personal knowledge of the matters stated herein as well as in the Movant's motion and the facts set forth are true and accurate to the best of my knowledge and belief.

4.      I make this affidavit from personal knowledge and my review of business records maintained by Movant regarding the debtor Dale J. Morgado (the "Debtor"), prior loan with Movant and in support of Movant's motion for relief from the automatic stay.

5.      The business records that I have reviewed and rely upon in the making of this affidavit were produced in the usual and ordinary course of United Bank's business as a financial institution, lender and loan servicer. The entries reflected within those records were made at or within a reasonable period of time of the event reflected.

6.      United Bank was the owner and holder of a promissory note dated January 26, 2015 in the original principal amount of $728,000.00 executed by Debtor in favor of United Bank (the

"Note"). A true and accurate copy of the Note (redacted as required by bankruptcy rules) is attached to this affidavit as Exhibit A.

7.    The Note was secured by an open-end mortgage deed encumbering the Property which was executed and conveyed by Blackacre Realty, LLC in favor of United Bank on January 26, 2015 (the "Mortgage"). The Mortgage was recorded on January 29, 2015 in Volume 2410 at Page 145 of the Wilton Land Records. A true and accurate copy of the Mortgage (redacted as required by bankruptcy rules) is attached to this affidavit as Exhibit B.

8.    The Note and Mortgage have not been paid since September, 2017.

9.    The Note and Mortgage were transferred and assigned to Movant (a wholly owned subsidiary of United Bank) by Allonge and Assignment dated April 27, 2018.

10.    As a result of the Default, United Bank commenced a foreclosure action in the State of Connecticut Superior Court for the judicial district of Fairfield at Stamford bearing the caption "*United Bank v. Dale James Morgado et als.*" and docket number FST-CV-18-6035258-S (the "Foreclosure").

11.    Within the Foreclosure, a judgment of foreclosure by sale in the name of Movant (Substitute Plaintiff) was entered by the Superior Court in April, 2019. At the time of the entry of the judgment, Movant's debt as of February 4, 2019 was determined to be $788,225.09 (plus additional fees and costs awarded by the court) and the fair market value of the Property was $920,000.00. A subsequent appraisal, including additional acreage indicated a value of the two combined parcels which comprise the Property to be valued at $975,000.00. A true and accurate copy of the judgment notice is attached to this affidavit as Exhibit C.

12.    Movant seeks relief for the purpose of obtaining possession of the Property from the non-owner Debtor subsequent to the completion of the Foreclosure which would be currently precluded by the automatic stay.

13.    This affidavit is submitted in support of Movant's motion for relief from the automatic stay to permit it to complete foreclosure and proceed with enforcement of its rights to obtain possession of the Property as provided by applicable non-bankruptcy law.

By: _____
Stacey O'Sullivan
Duly Authorized

STATE OF CONNECTICUT        :
                                              :    ss: South Windsor
COUNTY OF HARTFORD        :

Subscribed and sworn to before me this 27th day of February, 2020.

_____
Notary Public
My Commission Expires:

SARAH MOTTOLA
NOTARY PUBLIC
STATE OF CONNECTICUT
MY COMMISSION EXPIRES 03-31-24

EXHIBIT _A_

NOTE

HORGADO

JANUARY 26, 2015                MANCHESTER,                    CONNECTICUT
[Date]                              [City]                          [State]

19 SUGAR HOLLOW ROAD, WILTON, CT 06897
[Property Address]

1. BORROWER'S PROMISE TO PAY

    In return for a loan that I have received, I promise to pay U.S. $728,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is UNITED BANK. I will make all payments under this Note in the form of cash, check or money order.

    I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. INTEREST

    Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.990%.

    The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

3. PAYMENTS

    (A) Time and Place of Payments

    I will pay principal and interest by making a payment every month.

    I will make my monthly payment on the 1ST day of each month beginning on MARCH 1, 2015. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on FEBRUARY 1, 2045, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

    I will make my monthly payments at 1645 ELLINGTON ROAD, SOUTH WINDSOR, CT 06074 or at a different place if required by the Note Holder.

    (B) Amount of Monthly Payments

    My monthly payment will be in the amount of U.S. $3,471.39.

4. BORROWER'S RIGHT TO PREPAY

    I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

    I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

5. LOAN CHARGES

    If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits,

MULTISTATE FIXED RATE NOTE --Single Family-- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
⬅ 5.38                                                     Form 3200    1/01 (page 1 of 3 pages)

6142382001

then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE FIXED RATE NOTE—Single Family— Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200   1/01 (page 2 of 3 pages)
5.38



6142382001

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

1/26/2015

BORROWER   DALE JAMES MORGADO   DATE –

*[Sign Original Only]*

MORTGAGE LOAN ORIGINATOR RICHARD MCMILLEN
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER 704453
MORTGAGE LOAN ORIGINATION COMPANY UNITED BANK
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER 430007

MULTISTATE FIXED RATE NOTE –Single Family– Fannie Mae/Freddie Mae UNIFORM INSTRUMENT
Form 3200   1/01 *(page 3 of 3 pages)*
5.3R